# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELEON MAJOR, Administrator of the Estate of DEVON MAJOR and Administrator of the Estate of EZEKIEL MAJOR,** | : : : | **CIVIL ACTION NO. 3:18-1558** |
| | : | **(JUDGE MANNION)** |
| **Plaintiff** | : | |
| v. | : : | |
| **LUZERNE COUNTY CHILDREN AND YOUTH SERVICES, PHILADELPHIA DEPARTMENT OF HUMAN SERVICES, DIVISION OF CHILDREN AND YOUTH, and CITY OF PHILADELPHIA,** | : : : : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court are a motion for judgment on the pleadings filed on behalf of defendant Luzerne County Children and Youth Services ("LCCYS") (Doc. 27) and a motion for judgment on the pleadings filed on behalf of defendants Philadelphia Department of Human Services, Division of Children and Youth ("DHS") and the City of Philadelphia (Doc. 29). Upon review, the defendants' motions will be granted.

**I.    PROCEDURAL HISTORY**

By way of relevant background, on July 9, 2018, Deleon Major ("plaintiff"), as Administrator of the Estates of Devon Major and Ezekiel Major, filed a complaint in the Court of Common Pleas of Luzerne County alleging a single claim pursuant to 42 U.S.C. §1983. On August 6, 2018, the matter was removed to this court. (Doc. 1). On September 5, 2018, the plaintiff filed an amended complaint in which he again sets forth only one count alleging substantive and procedural due process violations under the Fourteenth Amendment. (Doc. 10).

On February 1, 2019, a motion for judgment on the pleadings was filed on behalf of LCCYS (Doc. 27) along with a brief in support thereof (Doc. 28). A motion for judgment on the pleadings was filed on behalf of DHS and the City of Philadelphia on February 5, 2019 (Doc. 29) along with a brief in support thereof (Doc. 30). The plaintiff filed a brief in opposition to DHS's motion on February 19, 2019 (Doc. 35) and a brief in opposition to LCCYS's motion on March 1, 2019 (Doc. 37). Reply briefs were filed by DHS on March 5, 2019 (Doc. 39) and LCCYS on March 7, 2019 (Doc. 41).

## II. LEGAL STANDARD

The standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that for deciding a motion to dismiss pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). In deciding the defendants' motions, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976 ). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662

3

(2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

In deciding the defendants' motions, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir.1993).

**III.    DISCUSSION**

According to the factual allegations of the amended complaint, on November 18, 2014, the Luzerne County Court of Common Pleas ordered that the plaintiff, the father of Devon and Ezekiel Major, and Susan Major ("Ms. Major"), the mother of the children, share legal custody of the children. The order gave the plaintiff primary physical custody of the children and permitted the children to relocate to the plaintiff's residence in Philadelphia,

4

Pennsylvania. The order further gave partial physical custody of the children to Ms. Major during the summers, on alternate weekends and on specific school breaks.

On January 12, 2016, DHS received a Child Protective Services report which alleged that Ezekiel, then five years old, was observed that day with a bruise on the left side of his face near his eye and that there was a bruise on the back of his left shoulder. The report alleged that when Ezekiel was asked what happened, he stated that on January 11, 2016, the plaintiff had hit him with a belt because he was hitting Devon. The report alleged that Ms. Major was residing in Arizona and was not involved in the children's care and that the plaintiff was the primary caregiver for the children.

On the date of the report, DHS conducted a home visit with the plaintiff, Devon and Yolanda Edwards, who was the plaintiff's paramour at the time. During this visit, the plaintiff admitted to hitting Ezekiel with a belt causing injury to his back, but denied being the cause of the other injuries. DHS then informed the plaintiff that the children could not remain in his care while the investigation was pending. Ms. Major, who was apparently residing in Wilkes-Barre, Pennsylvania, not Arizona, agreed to care for the children pending a Shelter Care Hearing. On that date, DHS obtained an Order for Protective

Custody and the children were placed with Ms. Major in Luzerne County, Pennsylvania.

On January 14, 2016, a Shelter Care Hearing was held in the Philadelphia County Court of Common Pleas and, as a result of that hearing, the Order for Protective Custody was lifted, DHS's temporary commitment was discharged, and DHS was ordered to supervise. The court ordered that Ms. Major provide a progress report and treatment plan, a list of the types of medications prescribed by her psychiatrist/psychologist and a list of her previous hospitalizations. It was further ordered that DHS make a referral to LCCYS to request a courtesy home visit of Ms. Major's home to assess the safety of the children in the home due to Ms. Major having a history of mental health issues, namely, post-traumatic stress disorder ("PTSD") and severe depression. At the time, Ms. Major had been hospitalized in mental health facilities three times within the prior five years. It is alleged that Ms. Major would become suicidal and have homicidal ideations with thoughts of killing Mr. Major and his paramour, she admitted to using cannabis on a daily basis, and she had been charged with use/possession of drug paraphernalia and credit card fraud. LCCYS declined DHS's request for a courtesy home visit of Ms. Major's home and DHS made no further attempts to arrange for a home

visit of Ms. Major's home and never followed through with making sure that Ms. Major was providing progress reports and her treatment plans to the court.

On February 23, 2016, an adjudicatory hearing was held and an order was issued finding the children were not dependent. As a result of the hearing, it was ordered that legal and physical custody would remain with Ms. Major with the plaintiff being awarded weekend supervised visitation. The docket sheet relating to that proceeding reflects that, while a number of requirements were placed upon Ms. Major[1], any temporary legal and physical custody by DHS was discharged at that time.

On October 25, 2017, the children and Erik Dupree, their sixteen year old half-brother, were home while Ms. Major attended a work-related event. On that date, Erik called Luzerne County 911 and reported that an individual by the name of Preston Bonnett was on the back porch of the home. Ms. Major and Mr. Bonnett had a contentious history. They met through an

---

[1]Ms. Major was required to place the children in a car seat/seat belt when traveling, comply with medication management and therapeutic services, take the children to therapy and follow therapeutic recommendations, keep the plaintiff informed of any and all appointments and the names of doctors and their addresses, and obtain insurance for herself and the children.

advertisement on Craigslist in 2015 and Mr. Bonnett later moved in with Ms. Major. A couple of months after they began dating, the two were charged with access device fraud for using fraudulent debit cards to buy gift cards and other items. They each pleaded guilty to misdemeanor theft and served one year of probation. In or around June 2017, Ms. Major and Mr. Bonnett had a falling out after Mr. Bonnett brought another woman to Ms. Major's home. Ms. Major kicked Mr. Bonnett and the woman out of her home. Mr. Bonnett later returned to the home and threw a beer bottle through a window. Sometime thereafter, Ms. Major, Mr. Bonnett and the other woman were involved in a confrontation during which Mr. Bonnett and the woman began screaming at Ms. Major and the woman broke another window in Ms. Major's home. Around this time, it is alleged that Ms. Major informed the local police that she had installed security cameras at her home due to concerns for her family's safety.

After the initial call by Erik to Luzerne County 911 on October 25, 2017, a second call was placed to Luzerne County 911 reporting a fire at Ms. Major's home. Emergency responders arrived at the home and pulled the three children from the fire; tragically, none of the children survived. Mr. Bonnett was later charged with criminal homicide and arson as a result of the fire. On June 4, 2019, Mr. Bonnett was found guilty of murder in the second

degree, murder in the third degree and arson.² He was sentenced the next day to three consecutive life sentences without the possibility of parole.

The plaintiff's amended complaint alleges that the defendants failed to adhere to their required and mandated safety protocol, policies and procedures in returning the children to the custody of Ms. Major knowing that the environment was unsafe, the failure of which proximately caused the children's death. The plaintiff further alleges that the defendants failed to secure the necessary background and clearance checks of Ms. Major before the children were placed back in her custody and that even a cursory review of the internal records of the defendants would have shown that Ms. Major lacked a stable environment in which to raise the children. According to the amended complaint, the defendants' failure to investigate fully into the suitability and fitness of Ms. Major's home and their failure to maintain proper and reasonable supervision and inspection of her home violated the children's right to procedural due process because there existed reason to believe that the safety of the children would be jeopardized by being placed back in Ms. Major's home.³ The plaintiff further alleges that the fact that the children were

---

²At the time of the complaint, Mr. Bonnett was still awaiting a trial.

³The plaintiff brings the instant action only in his capacity as
(continued...)

placed back in the custody of Ms. Major, despite the defendants obtaining no evidence that returning the children to his home would not be in the children's best interests, violated the children's substantive due process rights to familial integrity. The plaintiff alleges that the defendants had a policy of being deliberately indifferent to training its staff members, employees, agents and servants in parents' and children's constitutional rights, which violated the children's rights under the Fourteenth Amendment.

In both of the motions pending before the court, the defendants argue that the plaintiff's procedural and substantive due process claims fail to state a claim upon which relief can be granted. The Due Process Clause prohibits government interference with family relationships unless the government adheres to the requirements of procedural and substantive due process. See Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). In determining whether the rights to familial integrity were violated, the court must balance the plaintiff's liberty interests with the competing government interest in protecting children from abusive parents.

---

[3](...continued)
administrator of the children's estates. Despite not bringing a claim on his own behalf, the amended complaint appears to seek damages for the plaintiff in his own right, including damages for "mental anguish, anxiety, distress, stress, sleeplessness and humiliation.

Id. Some process is required every time the State seeks to alter, terminate or suspend the parent's right to custody of minor children. McCurdy v. Dodd, 352 F.3d 820, 827 (3d Cir. 2003).

As indicated earlier, the plaintiff alleges that the defendants' failure to investigate fully into the suitability and fitness of Ms. Major's home in relation to the placement of the children and their failure to maintain proper and reasonable supervision and inspection of her home violated the children's right to procedural due process because there existed reason to believe that the safety of the children would be jeopardized by being placed back in Ms. Major's home. Procedurally, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Miller v. City of Philadelphia, 174 F.3d 368, 373 (3d Cir. 1999) (quoting Matthews v. Eldridge, 424 U.S. 319, 333 (1976).

Here, despite the plaintiff's claim of a procedural due process violation, the plaintiff's own amended complaint demonstrates that he and the children were, in fact, afforded all the procedural due process owed them in relation to the children's placement. To this extent, the plaintiff's allegations demonstrate that, on January 12, 2016, DHS received a Child Protective Services report that Ezekiel was observed with bruising on the left side of his

face and on his back as a result of being hit with a belt by the plaintiff. During a home visit on the same date, the plaintiff admitted that he struck his five year old with a belt leaving him with an injury. As a result, DHS obtained an Order for Protective Custody and the children were placed with their mother, Ms. Major. At the time, the plaintiff's own amended complaint indicates that the Luzerne County Court of Common Pleas had previously awarded Ms. Major joint legal and partial physical custody of the children with her having physical custody of the children during the summer, on alternating weekends and on certain holidays.

Two days after DHS obtained the Order for Protective Custody, a Shelter Care Hearing was held in the Philadelphia County Court of Common Pleas which was attended by the plaintiff and Ms. Major, both of whom were represented by counsel and had the opportunity to be heard. As a result of that hearing, the court lifted the Order for Protective Custody, DHS's temporary commitment was discharged and DHS was ordered to supervise. A little over one month later, on February 23, 2016, an adjudicatory hearing was held. Again, both the plaintiff and Ms. Major were present at the adjudicatory hearing with counsel and had the opportunity to be heard. At that hearing, the court held that the children were not dependent and that Ms.

Major would retain physical custody of the children, with the plaintiff having supervised visits. While a number of requirements were placed upon Ms. Major at that time, once the court declared the children were not dependent, any involvement by the defendants was complete.

In light of the foregoing, the court finds that the plaintiff has failed to state a procedural due process claim as the plaintiff, on behalf of the children had ample opportunity to be heard with regard to any concerns regarding the placement of the children. The defendants' motions for judgment on the pleadings will therefore be granted on this basis.

The plaintiff claims a violation of the children's substantive due process right to familial integrity based on "the fact that the children were placed back in the custody of Ms. Major, despite the defendants obtaining no evidence that returning the children to the home of Mr. Major would not be in the children's best interests." In considering a substantive due process claim, allegations of negligence or lack of objectively reasonable grounds for a decision, fail to rise to the level of a substantive due process violation. Miller, 174 F.3d at 376. Instead, the plaintiff must show that the actions of the defendants "shocks the conscience." Id. at 375. The "shocks the conscience" test can only be met by the evidence that the defendants' actions were

grossly negligent or arbitrary. Rivas v. City of Passaic, 365 F.3d 181, 195 (3d Cir. 2004).

Here, DHS only became involved when Ezekiel, a five year old boy at the time, was struck by the plaintiff with a belt leaving injuries on his body. After the plaintiff admitted to striking Ezekiel with a belt, DHS obtained an Order for Protective Custody and placed temporary custody of the children with Ms. Major, who already had joint legal custody and partial physical custody of the children. After an investigation and two hearings on the matter, the Philadelphia County Court of Common Pleas ordered that the children were not dependent and any temporary legal or physical custody by DHS was terminated. It was further ordered that physical custody of the children remain with Ms. Major. There is nothing in these allegations which rises to the level of the conscious shocking behavior required to demonstrate a substantive due process violation by the defendants. Further, the plaintiff cannot establish a substantive due process violation by the defendants based upon the tragic events which led to the untimely deaths of the children in light of the fact that the defendants' obligations had been discharged almost two years prior to those events.

To the extent that the plaintiff attempts to impose liability against the

defendants based upon the "state-created danger doctrine," the following factors must be met:

   (1)   The harm ultimately caused was foreseeable and fairly direct;
   (2)   A state actor acted with a degree of culpability that shocks the conscience;
   (3)   A relationship between the State and the Plaintiff existed such that the Plaintiff was a foreseeable victim of the Defendant's acts or a member of a discreet class of persons subjected to the potential harm brought about by the state's actions, as opposed to the member of the public in general; and
   (4)   A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger that had the State not acted at all.

Bright v. Westmoreland County, 443 F.3d 276, 281-82 (3d Cir. 2006) (citing D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992)). A state-created danger is not found without an affirmative exercise of authority, as it is the misuse of a state's authority rather than the failure to use it that violates the Due Process Clause. Id. Here, there is nothing alleged to establish that the harm to the children resulting from the actions of a third party in setting fire to Ms. Major's home was foreseeable to the defendants who, almost two years earlier, had been discharged of any obligations with regard to the children.

   In light of the above, the court finds that the plaintiff has failed to state

a claim for substantive due process violations against the defendants. As such, the defendants motions for judgment on the pleadings will be granted on this basis as well.

## IV. CONCLUSION

Upon consideration of the amended complaint and the motions filed in the instant action, the court finds that the plaintiff has failed to state a claim for either procedural or substantive due process violations. As such, the defendants' motions for judgment on the pleadings (Doc. 27, Doc. 29) will be **GRANTED**.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 20, 2019**
18-1558-01.wpd